**MIRANDA v. CLARK, Attorney General et al.**

**No. 12334.**

United States Court of Appeals
Ninth Circuit.

Feb. 15, 1950.

Rosenberg & LaVetter, Tucson, Ariz., for appellant.

Frank E. Flynn, U. S. Atty., Phoenix, Ariz., Don Hummel, Asst. U. S. Atty., Tucson, Ariz., for appellee.

Before DENMAN, Chief Judge, BONE and ORR, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a judgment in an action wherein appellant sought declaratory judgment against Tom C. Clark, Attorney General of the United States, Ugo Carusi, United States Commissioner of Immigration, and William I. Crane, Officer in charge of the Port of San Luis, Arizona. The judgment of the district court revoked a previous interim order of the court which had restrained the arrest and deportation of appellant, and declared that appellant was, by reason of forfeiture, no longer a citizen of the United States.

The case was disposed of below upon a formal statement of facts signed by the parties with the agreement that it should be the basis of the district court's decision. Omitting irrelevant matter the statement is as follows:

"Plaintiff, Oscar A. Miranda, also known as Oscar Miranda Arteche, was born December 11, 1925, in the City of Los Angeles, and State of California, of Mexican parents, who took him to Mexico in 1930. He has resided in San Luis, Sonora, Mexico. On August 9, 1946, he registered under the Selective Service and Training Act of 1940, 50 U.S.C.A.Appendix, § 301 et seq., in Tucson, Arizona, and was classified as 1-A and granted permission to visit his parents in San Luis, Sonora, Mexico, from September 20, to September 25, 1946. On the 25th day of September, 1946, he attempted to reenter the United States at the Port of San Luis, Arizona, as an American citizen, but he was prevented from so doing by the United States Immigration authorities at said port, and he was held for a Board of Special Inquiry which, after hearings conducted on September 26, 1946, October 7, 1946, July 10, 1947, December 4, 1947, and January 7, 1948, ordered him excluded on the ground that he had expatriated himself under the provisions of Section 401(e) of the Nationality Act of 1940, 8 U.S.C.A. § 801(e), by having voted in a contested political election (local primary election for city mayor) in Mexico on April 28, 1946, at San Luis, Sonora, Mexico. He was then 20 years old. The decision of the award was affirmed by the Commissioner of Immigration and Naturalization upon further review, by the Board of Immigration Appeals. On November 4th, 1946, before he had attained his majority, he filed this Suit for Declaratory Judgment, 8 U.S.C.A. § 903, to determine his citizenship. The hearing of this Suit for Declaratory Judgment was continued at the request of K. Berry Peterson, Assistant United States Attorney, Tucson, Arizona, to await the administrative decision.

"Dated this 8th day of March, 1949."

The parties are in agreement here that the question presented on this appeal is whether appellant, who was born in United States and when about five years of age was taken to Mexico (the country of his parents' origin) and who thus became subject to a dual nationality, can expatriate himself by voting (at the age of 20) in a primary local election in his then city of residence in Mexico.

The controlling provisions of law are Sections 801 and 803 of Title 8 U.S.C.A., these being part of the so-called Nationality Act of 1940. Section 801 provides that a person who is a national of the United States whether by birth or naturalization, shall lose his nationality by: (e) "Voting in a political election in a foreign state * * *."

Section 803(b) provides: "No national under eighteen years of age can expatriate himself under subsections (b) to (g), inclusive, of section 801."

In our view, the statutory provisions above noted leave no doubt that Congress thereby removed, and intended to remove, the barrier to a voluntary expatria-

tion by a national who is over the age of eighteen years. After arriving at that age a voluntary act of expatriation binds him, sec. 803(b). Any other construction of the language of the Act (as applied to the situation in the case at bar) would amount to an amendment of the Act by judicial interpretation and import into it obscurities which we believe would thwart a clearly expressed Congressional will.[1]

The provisions of law we have quoted do not result in the rights of citizenship being "destroyed by ambiguity" because that sort of vice is not present in these plain and simple provisions of the 1940 law. They bind the courts unless it can be said that they are clearly unconstitutional, a conclusion without rational foundation.

Appellant summarizes his argument as follows: "A person born in the United States and taken during his minority to the country of his parents' origin and who became subject to a dual nationality, does not lose his citizenship in the United States by voting in a contested local political election during his minority, if on attaining majority he elects to return to the United States, assume his obligations and retain his American citizenship."

In support of his contentions appellant relies on four cases—Perkins v. Elg, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320; Attorney General etc. v. Ricketts, 9 Cir., 165 F.2d 193; Inouye et al. v. Clark et al., D.C., 73 F.Supp. 1000, and United States ex rel. Baglivo v. Day, D.C.S.D.,N.Y., 28 F.2d 44. It is to be noted that in each of these cases the fact situation with which they dealt was entirely different from that presented in the case at bar. With the exception of the Inouye case they are concerned with happenings and events which occurred prior to the enactment of the Nationality Act of 1940 which was designed to clarify the then existing law by clearly specifying a definite method of terminating dual citizenship and of electing United States nationality.[2]

A brief reference to our decision in the Ricketts' case indicates that it dealt with rights and privileges which were not affected by the later enacted 1940 Nationality Act. (See our comment in note 2 of opinion.)

As pointed out by the court in the Inouye case, 73 F.Supp. at page 1002, the principles applicable to a renunciation of citizenship by a Japanese of the age of seventeen years (where the statute is silent as to the age when a person may make such a renunciation) are not applicable where the statute specifically provides that a national who has reached the age of eighteen years can expatriate himself under section 803.[3]

The Baglivo case (decided in 1928) involved the question of whether a native born minor renounced his American citizenship by serving in the Italian army. For the reasons suggested in our reference to the Inouye case the Baglivo case is inapposite.

The holding in the Elg case (1939) must be appraised in light of the subsequent enactment of the 1940 Nationality Act which carefully reduced to specific statutory form a description of the various acts which of themselves amount to a voluntary expatriation. Voting in a political election in a foreign state was one of these acts. Here the appellant voted in a political election in a foreign state when he was twenty years of age. That act amounted to a voluntary expatriation under the 1940 law.

The judgment of the lower court was correct and it is affirmed.

1. This expression of the Congressional purpose is referred to in Dos Reis ex rel. Camara v. Nicolls, 1 Cir., 161 F.2d 860, 863, (note 2) an opinion which contains an interesting discussion of the circumstances leading up to the adoption of the Nationality Act of 1940.

2. Sections 801(a) and (e) were enacted after the opinion in the Perkins v. Elg case.

3. Requiring an eighteen year old person residing abroad to perform certain specific acts in order to preserve the right of citizenship is far from a new idea in the field of legislation. See Act of March 2, 1907, 34 Stat. 1228, 1229, sections 2 and 6 dealing with requirement of registration of intention at American consulates.