BISCEGLIA v. ACHESON, Secretary of State.

No. 10959.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 24, 1952.

Decided May 8, 1952.

Jack Wasserman, Washington, D. C., for appellant.

Bruce G. Sundlun, Spec. Asst. to Atty. Gen., Department of Justice, with whom Charles M. Irelan, U. S. Atty. at the time the brief was filed, and Joseph M. Howard, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee.

George Morris Fay, U. S. Atty. at the time the record was filed, Washington, D. C., also entered an appearance for appellee.

Before WILBUR K. MILLER, FAHY and WASHINGTON, Circuit Judges.

PER CURIAM.

This is a suit brought under 8 U.S.C.A. § 903, to secure a judicial declaration that plaintiff-appellant is an American citizen. The Government contends that plaintiff-appellant has lost his citizenship on a variety of grounds, under the provisions of the Act of March 2, 1907, 34 Stat. 1228, and the Nationality Act of 1940, Section 401, 8 U.S.C.A. § 801.

At the hearing in the District Court, plaintiff-appellant testified that on March 24, 1946, he voted for mayor in the Italian town where he then resided, and that he did so quite freely and without duress. Section 401(e) of the Nationality Act provides that an American shall lose his citizenship by "voting in a political election in a foreign state." 8 U.S.C.A. § 801(e). There is, of course, no doubt that in 1946 Italy was a "foreign state"; the question is whether a local election of the sort here involved is a "political election" within the meaning of the Nationality Act.

■ No court has previously made an explicit ruling on this point. But none of the decisions in which local elections were in fact involved have questioned their political character on the ground that they were local,[1] and the Board of Immigration and Naturalization Appeals has squarely held municipal elections to be political. Matter of P——, 1 I. & N. Dec. 267. We see no escape from this conclusion. There can be no serious dispute that a mayoralty election is a "political election" in any ordinary and reasonable meaning of the phrase, and we must assume—nothing to the contrary appearing—that Congress used the language in its usual sense. We note that the complaint in this action admitted that the election in question was "political," and that appellant later entered a stipulation reciting that it was "a political, but not a national election."

■ We recently said that Section 401 (e) seeks "to distinguish between acts performed in the interest of maintaining our own governmental institutions and acts which tend to support or implement institutions other than our own." Acheson v. Wohlmuth, 90 U.S.App.D.C. ——, 196 F.2d 866. Participation in a municipal election falls within the latter category. True, such participation may or may not constitute an expression of the voter's national allegiance. But, as a practical matter, the courts cannot endeavor to ascertain in each case whether the motive for voting was consistent with continued allegiance to the United States. Cf. Savorgnan v. United States, 338 U.S. 491, 70 S.Ct. 292, 94 L.Ed. 287. Nor has Congress left open this subjective inquiry. If the election is "political," its scope—local or national—is immaterial: the statute declares that the voter shall lose his citizenship.

This conclusion requires affirmance of the judgment of the District Court, denying the relief sought. Under the circumstances we do not reach the remaining contentions of the parties.

Affirmed.

1. See Miranda v. Clark, 9 Cir., 180 F.2d 257; Tomasicchio v. Acheson, D.C., 98 F.Supp. 166, 174; Uyeno v. Acheson, D. C.W.D.Wash., 96 F.Supp. 510, 517; Brehm v. Acheson, D.C.S.D.Tex., 90 F. Supp. 662, 664–665.