**MINORU FURUNO v. ACHESON,**
Secretary of State.

No. 13308–WB.

United States District Court
S. D. California, Central Division.

July 24, 1952.

776

Wirin, Rissman & Okrand, Los Angeles, Cal., for plaintiff.

Walter S. Binns, U. S. Atty., Clyde C. Downing, Asst. U. S. Atty., Arline Martin, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

BYRNE, District Judge.

This is an action for a declaratory judgment of United States nationality instituted pursuant to 8 U.S.C.A. § 903.

Plaintiff was born in Pasadena, California, on July 30, 1925. At the age of three he was taken to Japan by his parents where he attended school until 1944. The notice of intention to retain Japanese nationality as required by Japanese law was not filed on behalf of the plaintiff within the required fourteen days after birth, and there is no contention that the plaintiff now is, or ever has been, a Japanese national. Between March 14, 1945 and March 12, 1948, plaintiff was employed in the engine room on Japanese government ferry boats repairing and operating engines. During the portion of that period subsequent to the early part of 1947 his work was under the direction of the American occupation forces. He was a first class engineer on small boats and a second class engineer on larger boats. On April 10, 1946, plaintiff voted in a Japanese general election. In the spring of 1949 he applied for an American passport as a citizen of the United States at the office of the United States Consul at Kobe, Japan. His request for a passport was denied and the Consul issued to plaintiff, on June 9, 1950, a "Certificate of Loss of Nationality".

The Certificate of Loss of Nationality was apparently issued solely on the ground that plaintiff had expatriated himself under 8 U.S.C.A. § 801(e), which provides:

"A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by: * * *

(e) Voting in a political election in a foreign state * * *."

This court finds as a fact that the plaintiff's act of voting was not his free and voluntary choice, but was the result of duress and coercion which impelled him to vote because he *feared* the consequences if he abstained from voting. See Kuwahara v. Acheson, D.C., 96 F.Supp. 38, where the general conditions surrounding the 1946 elections in Japan are discussed at length. The evidence in the present trial was to the effect that the conditions described in the Kuwahara case operated to deprive him of his free choice in deciding whether or not to vote.

The litigants have also put in issue, however, the question of whether plaintiff expatriated himself under 8 U.S.C.A. § 801(d), which provides:

"A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by: * * * (d) Accepting, or performing the duties of, any office, post, or employment under the government of a foreign state or political subdivision thereof for which only nationals of such state are eligible; * * *."

Four grounds are asserted by plaintiff for the nonapplicability of 8 U.S.C.A. § 801(d): (1) That Japan was not a "foreign state" during a portion of his employment; (2) that plaintiff was a minor, twenty years of age, during the critical portions of his employment; (3) that his employment was not one for which only nationals of Japan are eligible; (4) that his working for the Japanese government was not his free and voluntary act.

The first of these assertions is decided adversely to the claim of the plaintiff for the reasons stated in Kuwahara v. Acheson, supra.

In support of his second assertion, plaintiff relies on Perkins v. Elg, 307 U.S. 325,

59 S.Ct. 884, 83 L.Ed. 1320; Attorney General v. Ricketts, 9 Cir., 165 F.2d 193; and McGrath v. Tadayasu Abo (McGrath v. Kaname Furuya) 186 F.2d 766. Since it was decided prior to the adoption of the Nationality Act of 1940, the Perkins v. Elg decision is not authority for the proposition urged. Section 403(b) of the Nationality Act as adopted in 1940, 8 U.S.C.A. § 803(b), provides:

"(b) No national under eighteen years of age can expatriate himself under subsections (b) to (g), inclusive, of section 801."

The Ricketts case involved expatriation under 8 U.S.C.A. § 801(a), in which the voting and holding of public office, during minority, were presented simply as evidence of expatriation under 801(a). The validity of 803(b) was not involved. The Abo case likewise was not concerned with the validity of 803(b), since expatriation there was alleged to have been effected under 801(i).

▇ But in Miranda v. Clark, 9 Cir., 180 F.2d 257, 258, the court was squarely presented with the meaning and constitutional validity of 803(b). The court said:

"In our view, the statutory provisions above noted leave no doubt that Congress thereby removed, and intended to remove, the barrier to a voluntary expatriation by a national who is over the age of eighteen years. After arriving at that age a voluntary act of expatriation binds him, sec. 803(b). Any other construction of the language of the Act (as applied to the situation in the case at bar) would amount to an amendment of the Act by judicial interpretation and import into it obscurities which we believe would thwart a clearly expressed Congressional will."

As to the constitutional validity of 803(b), the court went on to say:

"The provisions of law we have quoted do not result in the rights of citizenship being 'destroyed by ambiguity' because that sort of vice is not present in these plain and simple provisions of the 1940 law. They bind the courts unless it can be said that they are clearly unconstitutional, a conclusion without rational foundation."

While the Miranda case involved a voting issue under 801(e), this court can discern no reason for not applying the rule of the Miranda case under 801(d). Judge Bone gave no intimation that such a distinction should be drawn.

The third contention of the plaintiff is that expatriation did not occur under 8 U.S.C.A. § 801(d) because he at no time either accepted or performed the duties of any post under the Japanese government "for which only nationals of such state are eligible".

When the plaintiff went to work on March 14, 1945, he was classified on the government records as Shi-Yatoi. On May 15, 1945 his classification was changed to Yatoi; on June 30th to Fuku-Kanpo, and on April 1, 1946 to Unyu-Gikan. The plaintiff was not advised of the change when he was classified as Fuku-Kanpo, nor was he advised of the change to Unyu-Gikan. The classifications had no connection with the particular work he was doing at the time. He continued doing the same work at the same pay with no change in responsibilities. Plaintiff's duties as first or second engineer depended upon the size of the ferry boat upon which he was then working. He never took an oath of any kind until he went to work for the occupation forces the early part of 1947.

It is the defendant's position that governmental employees classified as Fuki-Kanpo and Unyu-Gikan were "officials" of the government during the period covered by plaintiff's employment, and were required to be Japanese nationals in order to accept or perform this employment. From this, defendant concludes that plaintiff was expatriated under 801(d) when the Japanese government classified him on their records as Fuki-Kanpo on June 30, 1945.

The defendant concedes that there was no statute, ordinance or regulation specifically supporting his contention, but asserts that it must be implied from the following Japanese law:

(1) Paragraph 2, Article 24, Japanese Nationality Act of 1899.

(2) Imperial Ordinance No. 39, 1887.

(3) Paragraph 1, Article 9, Japanese Pension Law.

In the case of Naito v. Acheson, D.C., 106 F.Supp. 770, decided this day, the identical defense was presented .by the defendant and was discussed in detail by the court. For the reasons stated in the Naito case, the contentions of the defendant cannot be sustained.

There is an additional element in this case. This plaintiff *was not a national of Japan* and therefore not eligible to perform duties "for which only nationals of such state are eligible". Surely we may assume that inquiry would have been made as to his nationality if that were a condition precedent to his employment. We may reasonably infer that the plaintiff would not have been employed if not eligible for the position.

The plaintiff was not notified of his classification as Fuku-Kanpo or Unyu-Gikan until after he left the employment of the Japanese government. Assuming that such classifications resulted in his "performing duties of * * * employment * * * for which only nationals of such state are eligible", surely his action could not be considered voluntary. A situation of which he had no knowledge could not be said to be of his voluntary making.

A citizen may not be deprived of his birthright on evidence such as we have in this record.

Plaintiff is requested to prepare findings in accordance with Local Rule 7.