**VALDEZ. v. McGRANERY, Atty. Gen.**

No. 14268.

United States District Court
S. D. California, C. D.

Feb. 6, 1953.

174

Newman & Newman, Los Angeles, Cal., for plaintiff.

Walter S. Binns, U. S. Atty., Clyde C. Downing, Asst. U. S. Atty., and Robert K. Grean, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

BYRNE, District Judge.

These proceedings were instituted under section 503 of the Nationality Act of 1940, 8 U.S.C.A. § 903, for a judgment declaring the plaintiff to be a national of the United States.

Petitioner Valdez was born in this country on September 5, 1926, which event made him a citizen of the United States by virtue of Amendment XIV of the Constitution. When he was five years of age his parents moved to Mexico, taking him with them. In 1947 he sought to return to this country, but was excluded by the Immigration Service when it was determined, after hearing, that he had forfeited United States citizenship by remaining outside the jurisdiction of the United States for the purpose of avoiding or evading training and service in the armed forces of the United States in time of war, 8 U.S.C.A. § 801(j), U.S.Code Cong.Service 1944, p. 743.

Although Valdez testified that his father would not permit him to register for military service (he was 18 years of age at the time of the alleged acts of expatriation), convincing evidence was presented which clearly established that his action was voluntary and that he remained outside the United States in time of war for the purpose of evading and avoiding military training and service, and the court so finds.

The real problem which this case presents apparently has never been directly passed upon by the courts. Do the acts proscribed in section 401(j) of the Nationality Act of 1940, 8 U.S.C.A. § 801(j), result in the expatriation of a citizen of the United States if committed when the citizen is a minor under twenty-one years of age?

An analysis of section 401, 8 U.S.C.A. § 801, and section 403, 8 U.S.C.A. § 803, of the Nationality Act of 1940 and the law as it existed at the time of these enactments, is necessary to an understanding of this vexing problem.

Prior to 1907 there was no statutory law on the subject. Under the Act of 1907, Chapter 2534, 34 Stat. 1228, a citizen of the United States was deemed expatriated if naturalized in a foreign state in conformity with its laws, or if he took an oath of allegiance to a foreign state, or, in the case of a woman, by marriage to a foreigner. Several statutory changes followed but no comprehensive statute was adopted until the Act of 1940. The statutory provisions in the books prior to the Act of 1940 were never brought to the attention of the Supreme Court until Perkins v. Elg, 1939, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320. There has been considerable confusion as to what the Supreme Court declared to be the law in Perkins v. Elg, and several of the lower courts have misconstrued it as holding that a minor cannot be expatriated, *even for his own voluntary acts,* if he elects to retain his United States citizenship when he attains his majority. Actually the court was not concerned with the responsibility of a minor for his own voluntary acts, as the only question presented was the effect of the acts of *the minor's parents* and the construction of those acts by a foreign nation.

In construing the Act of 1907, the court said at page 343 of 307 U.S., at page 893 of 59 S.Ct.:

"Petitioners contend that respondent's acquisition of *derivative* Swedish citizenship makes her a person who has been 'naturalized under Swedish law', and that therefore 'she has lost her American citizenship' through the operation of this statute. We are unable to accept that view. We think that the statute was aimed at a *voluntary* expatriation * * *." (Emphasis supplied.)

As Mr. Justice Jackson stated in the recent case of Mandoli v. Acheson, 344 U.S. 133, 73 S.Ct. 135, 138:

"What it [Perkins v. Elg] held was that citizenship conferred by our Constitution upon a child born under its protection cannot be forfeited because the citizen during nonage is a *passive* beneficiary of foreign naturalization proceedings. It held that Miss Elg had acquired a *derivative* dual-citizenship but *had not* suffered *a derivative expatriation.* In affirming her right to return to and remain in this country, it did not hold that it was mandatory for her to do so." (Emphasis supplied.)

The Elg case was not authority before the Act of 1940, nor is it now authority, in a situation where the minor *voluntarily* performs the expatriating acts spelled out in the statutes. Before the Elg case, most of the courts construed the provision of the Act of 1907, relating to expatriation in a foreign state if naturalized in conformity with its laws, as not applying to a minor who acquired derivative citizenship by reason of the naturalization of his or her parents. However, in construing section 3 of the Act, which contemplated voluntary action, a different conclusion resulted. It was held in In re Wittus, D.C. E.D.Mich.1931, 47 F.2d 652, that a minor 19 years of age who married an alien thereby lost her citizenship under the provisions of section 3 of the Act of March 2, 1907, which provided that "Any American woman who marries a foreigner shall take the nationality of her husband." It cannot be said that the Elg case overruled the Wittus case as the voluntary acts of the minor were involved in the latter case, but not in the Elg case.

Such was the condition of the law when Congress enacted the Nationality Act of 1940. Congress recognized the distinction between expatriating acts which resulted from the voluntary action of a minor and those which were derivative, *i. e.* where the minor was a passive beneficiary of foreign naturalization proceedings based on the action of the minor's parents. Section 401(a) of the Act, 8 U.S.C.A. § 801(a), provides two methods of expatriation: "(a) Obtaining naturalization in a foreign state, either [1] upon his own application or [2] through the naturalization of a parent having legal custody of such person". The lawmakers then adopted the principle of Perkins v. Elg and included a proviso that nationality shall not be lost where the foreign nationality was obtained derivatively through the naturalization of a parent unless and until the child shall have attained the age of 23 years without acquiring permanent residence in the United States. Congress also followed the Wittus case with respect to the *voluntary acts* of the minor by omitting from the proviso, protection for the minor who obtains naturalization "upon his own application".

Section 401, when originally enacted, included eight subsections, *i. e.* subsections (a) to (h) inclusive. In 1944 subsections (i) and (j) were added, U.S.Code Cong. Service, pp. 661, 743. Special treatment for minors was expressed in (a) as indicated above and also in section 403(b), 8 U.S.C.A. § 803(b), which provided that "no national under eighteen years of age can expatriate himself under subsections (b) to (g), inclusive, of section 401." Congress declared the general rule that "A person who is a national of the United States * * * shall lose his nationality by" performing any of the enumerated acts and then specifically excluded certain classes of minors from the effect of some of the provisions. Applying the doctrine of *expressio unius est exclusio alterius,* those persons who are nationals of the United States and not included in the specific exceptions are subject to the general rule regardless of age.

It will be noted that the statute, as originally enacted, left only two situations where minors did not receive special treatment, viz., when the minor obtains nationality in a foreign state upon his own application and when he commits acts of treason against the United States. It is reasonable to believe that Congress felt that these acts were more serious than voting in a foreign election, accepting employment under the government of a foreign state, and the other acts enumerated

in section 401, and therefore did not extend the special treatment to minors who performed acts of treason or obtained foreign nationality upon their own application.

Section 401(j), with which we are here concerned, was added in 1944. Congress did not exempt a minor under 18 years of age from the provisions of 401(j), but left that section in the same category as the one pertaining to treason without a base age below which a minor would not be responsible for the consequences of his acts. Congress not only had the power to make this distinction, but the distinction is supported by logic.

The 18 year age base, if it were construed as applying to 401(j), would not avail the petitioner as he was not under 18, but he contends that the court should read a 21 year age base into the Act. If this were done, it would mean that Congress intended that a 20 year old person would be responsible for the consequences of his acts if he voted in a foreign election or accepted employment under the government of a foreign state, but would not be responsible for his acts of treason or departing from the United States in time of war for the purpose of evading military service. Such illogical reasoning cannot be attributed to Congress.

Petitioner asserts that Congress could not have intended that minor citizens, regardless of their tender years and immaturity, were to be subjected to the serious penalty of expatriation for departing from the United States in time of war for the purpose of evading military service. The appeal of this jury argument disappears when it is subjected to scrutiny. In the first place the only citizens who come within the purview of the statute are those who are subject to military service. When read in conjunction with the Selective Service and Training Act a minimum age base of 18 years is automatically applied to section 401(j). Congress did not make any distinction because of age with respect to penalties for criminal violations of the Selective Service Act, and the courts may not read such a distinction into the statute. Had Congress intended to except draft evaders below a particular age from section 401(j) it would have so stated. Absent any exception the general provision applies as in the case of penalties for criminal violations of the Selective Service Act.

In McGrath v. Tadayasu Abo, 9 Cir., 1951, 186 F.2d 766, our Court of Appeals held that minors under 20 years of age were incompetent to renounce their citizenship under section 401(i). The Abo case is not controlling here since it dealt with a different section of the Act and involved a factual situation not present here. In the case of Miranda v. Clark, 9 Cir., 1950, 180 F.2d 257, 259, the appellant contended that a minor 20 years of age was not expatriated by voting in a foreign election and relied upon Perkins v. Elg, supra, and similar cases. The Court of Appeals in rejecting this contention, stated: "It is to be noted that in each of these cases the fact situation with which they dealt was entirely different from that presented in the case at bar."

There is no ambiguity present in the provisions of section 401 although there may have been an ambiguity in the common law as it existed prior to the enactment of the Nationality Act of 1940. As the court stated in Miranda v. Clark, supra: "The holding in the Elg case (1939) [and, I add, in all cases prior to the 1940 Act] must be appraised in light of the subsequent enactment of the 1940 Nationality Act *which carefully reduced to specific statutory form* a description of the various acts which of themselves amount to a voluntary expatriation." (Emphasis supplied.) When Congress entered this field it provided that "A person who is a national of the United States * * * shall lose his nationality by" performing any of the enumerated acts, unless he comes within one of the specified exceptions. Under well established principles of law every national of the United States who is not excluded by the exceptions is included as a person who "shall lose his nationality by" performing any of the enumerated acts.

Congress has specified certain situations where a person under 23 years of age cannot be expatriated and other situ-

ations where persons under 18 years of age cannot be expatriated, but it has not specified any base age below which a person cannot be expatriated for departing from this country in time of war for the purpose of evading military service. For the court to read into the statute any base age, whether 21, 23, or 18, would be to amend the Act by judicial interpretation. This the court may not do.

Judgment will be for the defendant, who is requested to prepare and submit findings pursuant to local rule 7.