**Sebastian VACCARO, Appellant,**

v.

**Sam BERNSEN, Acting Officer in Charge, United States Immigration & Naturalization Service, New Orleans, Louisiana, Appellee.**

No. 17528.

United States Court of Appeals
Fifth Circuit.
May 13, 1959.

Rehearing Denied July 6, 1959.

266

Richard C. Baldwin, New Orleans, La., for appellant.

Lloyd Cyril Melancon, Asst. U. S. Atty., M. Hepburn Many, U. S. Atty., Prim B. Smith, Jr., First Asst. U. S. Atty., New Orleans, La., for appellee.

Before RIVES, JONES and WISDOM, Circuit Judges.

JONES, Circuit Judge.

Sebastian Vaccaro, the appellant, was born in New York City, New York, on May 8, 1908. His parents were born in Italy and had retained Italian citizenship. While a small child he was taken to Italy and there he lived until 1950. In 1950 Vaccaro went to Argentina on an Italian passport, and there he remained until 1955. On June 15, 1955, Vaccaro entered the United States at the Port of New Orleans, Louisiana, as a stowaway. In his possession was an Italian passport and a Certificate of Identity issued by the Republic of Argentina. He was taken into custody and proceedings for his deportation were commenced. An order for deportation was made and affirmed by the Board of Immigration Appeals. The basis for the order was that Vaccaro had voted in political elections in Italy in 1948. The appellant sought review of the adverse administrative order by a suit for a judicial declaration that he is a citizen and for a revocation of the deportation order. Judgment was against Vaccaro in the district court and he has appealed.

Before us it is contended that it has not been proved, clearly and convincingly, that Vaccaro voluntarily voted in political elections in Italy. In the record before us are these questions asked of the appellant and his answers:

"Q. How long had you been voting in elections in Italy? A. I don't remember too well, I did vote once or twice. If I had known that voting and serving in the army would have made me lose my United States citizenship I wouldn't have done so. The consul only posts notices to that effect in the town where the consulate is located, and the people in the small towns like I was in didn't get any chance to see such a notice and know nothing about losing their American citizenship.

"Q. But you were notified by the American Consul that you had lost your American citizenship? A. At that time, yes I was.

"Q. And it was subsequent to that that you secured your passport from the Italian authorities as an Italian citizen? A. Yes, I have a family to support so I decided to leave and go to Argentina to try to make money to support my family.

"Q. How long have you been living in Argentina? A. About four-and-a-half years. I imagine that stamp in my passport showing entry into Argentina January 4, 1951, is the correct date.

"Q. Then you are a permanent resident of Argentina, are you not? A. Yes, sir.

"Q. Where have you been living in Argentina? A. I live in Ianuz, which is a small subdivision of Buenos Aires about twenty minutes drive to Buenos Aires."

Other questions were asked and other responses were given:

"Q. It is noted in your sworn statement that you have voted in elections in Italy on one or two occasions. Do you recall the approximate years that you did vote? A. Only thing I remember is when de Gasperi was elected after the war in 1948. (Year supplied by Counsel.)

"Q. For what purpose did you vote in these two elections about 1948? A. It was for the purpose of bringing christian democracy about. They insisted that everybody vote.

"Q. In other words you were voting for the election of certain officials of the Christian Democratic Party to be elected to political positions. Is that correct? A. I do not recall if it was even for the small town it may have been more important, for the President himself.

"Q. On how many occasions did you vote like that? A. Not more than two times. One I remember but the other I do not know.

"Q. Have you ever voted on any other occasion? A. No."

The applicable statute provides:

" * * * a person who is a national of the United States whether by birth or naturalization, shall lose his nationality by:

\* \* \* \* \* \*

"(5) voting in a political election in a foreign state or participating in an election or plebiscite to determine the sovereignty over foreign territory." 8 U.S.C.A. § 1481.

The appellant first urges that there is no sufficient evidence that he voted in an election. He contends that even if it is shown that he voted in elections, it is not made to appear that it was in political elections that he voted. It seems quite clear that the appellant's own statements refute his claims. The purpose of his voting in at least one of the elections was to bring the Christian Democratic Party into power. It can hardly be said that such an election was not a political election.

The appellant finally contends that his votes were not cast voluntarily but on the contrary were given under pressure and duress. He would have us assume that if he carried an Italian Certificate of Good Behavior with a "Did not vote" notation upon it, he would be unable to obtain employment from the Italian Government and private industry might refuse him a job. He would have us assume that Communists or Communist sympathizers had threatened harm to him or his family if he did not vote in the Italian elections. Possibly, says the appellant, he had employment in Italy which required him to vote; or perhaps he was coerced into voting by his employer or supervisor. There is nothing in the record to establish or refute these conjectural suppositions. The Government has the burden of showing by clear, convincing and unequivocal evidence that there was a voluntary act which resulted in the loss of citizenship; and where the act is one required by the statute of the foreign nation, such as compulsory military service, the Government must carry the burden of showing that the conduct was a response, not to the legal requirement but to his own direction. Mitsugi Nishikawa v. Dulles, 356 U.S. 129, 78 S. Ct. 612, 2 L.Ed.2d 659. This principle, applicable in denaturalization cases, is an exception to the general rule that duress must be proved by one who relies upon it. Whether the Government must prove the absence of duress of any other kind seems doubtful. See the several opinions in Mitsugi Nishikawa v. Dulles, supra. To extend the exception so as to cover all classes of duress would, it seems, restrict the application of the statute to a much narrower range than the Congress intended. The improbability of disproving by clear, convincing and unequivocal evidence the several hypotheses posed by the appellant demonstrates the difficulty of enforcing the section of the statute with which we are concerned.

Whether voting in a foreign state which is induced by economic pressures

is to be regarded as involuntary, and, if so, whether the Government must prove the absence of such pressure in order to show the voluntary character of the voting need not, we think, be decided in this appeal. The appellant points to his statement that "They insisted that everybody vote", as evidence of coercion. The Government stresses the same statement in its context with the other portions of the appellant's testimony which is herein quoted. It is apparent that the appellant was under no such coercion as would have compelled him to vote if he had known that his American citizenship was in jeopardy. And, of course, his intent with respect to losing or retaining his citizenship is not material.

We have no difficulty in reaching the conclusion that there was no error in the determination by the district court that the appellant voluntarily voted in a political election in Italy and lost his United States nationality by so doing. Perez v. Brownell, 356 U.S. 44, 78 S.Ct. 568, 2 L. Ed.2d 603; Acheson v. Mariko Kuniyuki, 9 Cir., 1951, 189 F.2d 741, rehearing denied 190 F.2d 897, certiorari denied 342 U.S. 942, 72 S.Ct. 554, 96 L.Ed. 701. The judgment of the district court is

Affirmed.