MATTER OF LYONS

In EXCLUSION Proceedings

A-12737518

*Decided by Board September 5, 1962*

A native-born citizen who voluntarily voted in municipal elections in Canada, choosing mayors and other city officials, from about 1938 until about 1954 or 1955, lost her United States citizenship under section 401(e) of the Nationality Act of 1940 by voting in political elections, since elections to choose representatives of the people for the conduct of the government of a geographical subdivision of a foreign state falls squarely within the purview of the statute.

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1251(a)(20)]—Immigrant, no visa.

The special inquiry officer has certified the case of the applicant to this Board because of an apparent conflict in rulings by the Department of State and the Immigration and Naturalization Service on the issue of loss of citizenship by voting in a local election in a foreign country. The point of controversy is the scope of the term "political election" as used in section 401(e) of the Nationality Act of 1940 and section 349(a)(5) of the Immigration and Nationality Act.

The applicant was born in Presque Isle, Maine, and is now a widow, 74 years old. She resided in the United States from birth until 1937 in which year she married a Canadian citizen and took up residence with him in Canada. Her husband died there in the fall of 1961. She subsequently applied for admission as a United States citizen destined to live with her daughter in New Hampshire. She is not in possession of an immigrant visa or other valid travel document.

The applicant's testimony indicates that she has performed no act of an expatriating nature other than her several acts of voting in municipal elections in Canada. She states that she did not vote in any national or provincial elections because her husband never voted in those elections. She stopped voting in municipal elections when her husband became disabled. The elections in which she participated chose mayors and other city officials.

Prior to her application for admission to the United States, the

applicant inquired at the American Consulate at St. John, New Brunswick, about her United States citizenship. She informed the Consulate that she intended to come to the United States to live with her daughter. In connection with her inquiry, she completed a questionnaire in which she admitted that she had voted at Fredericton, New Brunswick, in municipal elections.

The applicant's documents were returned to her in an envelope of the American Consulate, St. John, New Brunswick, along with an unsigned note stating that it appeared from the information presented that she is a citizen of the United States and suggesting that she communicate with the Immigration and Naturalization Service for requirements to prove her United States citizenship.

During the hearing before the special inquiry officer the applicant admitted that she voted in municipal elections at Fredericton, New Brunswick, from about 1938 until about 1954 or 1955. She further admitted that she voted voluntarily. The special inquiry officer concluded that she has expatriated herself under the provisions of section 401(e) of the Nationality Act of 1940 and therefore, as an immigrant not in possession of proper documentation, is excludable from the United States.

The Service Representative during oral argument before this Board submitted a letter dated January 11, 1960 from the Passport Office of the Department of State to the Commissioner in another case. The letter requested the Service to disregard two certificates of loss of nationality which the Department of State had approved under the provisions of section 401(e) of the Nationality Act of 1940, based upon acts of voting in a municipal election in Saskatchewan, Canada.

The letter states that in view of the comments of the Supreme Court in the case of *Perez* v. *Brownell,* the Department of State requested the American Consulate at Winnipeg to make a further investigation of that election. The Consulate's report showed that the Canadian authorities had stated the municipal election in question was not of a political nature in any sense, since it was not campaigned along any political line and was conducted on a strictly municipal basis involving only local municipal issues. On these further facts the Department of State reversed its decision of expatriation.

As the Service Representative has noted, the record in the instant case does not reflect whether the facts pertaining to the elections in which the applicant participated would cause the officials of the Department of State in Washington to support the action of the consular officer at St. John, New Brunswick, or whether that officer acted independently in the matter. Apparently, however, the unsigned communication to the applicant from the consulate indicating that she still possessed United States citizenship was based upon a conclusion that

those elections were not "political elections" within the meaning assigned to that term by the Department of State.

This Board has previously ruled that voting for an alderman in a municipal election in Ontario, Canada, was voting in a political election within the meaning of section 401(e) of the Nationality Act of 1940, *Matter of P—*, 1 I.&N. Dec. 267. In that case we concluded that the term "political" is used in that section in the broad sense of "governmental" or "public," as distinguished from "private."

We later considered whether a local election in Canada to determine whether the sale of beer and wine should be under the provisions of the Liquor Control Act was a political election within the meaning of that same provision of law, *Matter of F—*, 2 I.&N. Dec. 427. The majority of the Board indicated its belief that Congress employed the word "political" in its sense of that which is done pursuant to political affiliation, but decided that the election was a referendum or plebiscite and not an "election," political or otherwise, as the term is employed in section 401(e) of the Nationality Act of 1940.

In that case there was also a communication from the Department of State. Richard W. Flournoy, Assistant Legal Adviser, commented to the Board, "in my opinion a local election of the kind mentioned does not come within the statutory provisions in question and is not to be regarded as a 'political election.' I have discussed the matter with other members of the office, and this appears to represent the consensus of opinion."

The case also referred to a prior ruling of the Department of State that the test whether American nationals who voted in municipal elections in Chile lost their American nationality depended upon whether the elections were properly to be denominated political elections, that is, whether political issues were involved or the campaigns waged along political lines between candidates of opposing political parties.

The Chairman and one member of the Board dissented, arguing in favor of a broader interpretation of the word "political," and the case was certified to the Attorney General. That officer, noting the conflicting opinions, the majority of the Board and the Legal Adviser of the Department of State on one side and the Commissioner of Immigration and Naturalization and a minority of the Board on the other, reversed the Board's decision.

We have subsequently in considering local elections given a broad interpretation to the term "political election," in line with the Attorney General's opinion. *Matter of R—R—*, 3 I. & N. Dec. 890; *Matter of M—G—*, 7 I. & N. Dec. 665; *Matter of M—C—*, Int. Dec. 1182, Nov. 20, 1961. *Matter of M—C—* involved prior voting in a national election as well as voting in a municipal election in Mexico, but we considered both expatriating in nature.

70

It appears the Department of State has until recent years interpreted the term "political election" broadly, modifying the view which it expressed in *Matter of F—, supra*, possibly due to the Attorney General's opinion in that case. The letter of January 11, 1960, referred to above and certain judicial decisions involving local elections so indicate. In at least three cases the Department of State held that voting for a mayor in Italy resulted in expatriation. The Circuit Court of Appeals for the District of Columbia upheld the Government stating, "There can be no serious dispute that a mayoralty election is a 'political election' in any ordinary and reasonable meaning of the phrase, and we must assume—nothing to the contrary appearing—that Congress used the language in its usual sense." The court further said that if the election is "political," its scope, local or national, is immaterial and cited *Matter of P—, supra*, with approval. *Bisceglia v. Acheson*, 196 F. 2d 865 (C.A.D.C., 1952). One of the other cases was decided adversely to the Department of State on the issue of voluntariness of the voting, but did not question whether the election was a "political election" within the meaning of the statute. *Tomasicchio v. Acheson*, 98 F. Supp. 166 (1951). The third case upheld the Department of State's decision that expatriation had occurred. *Scavone v. Acheson*, 103 F. Supp. 59 (1952).

Voting in a local primary election for mayor of a city in Mexico has also been held to be expatriating. *Miranda v. Clark*, 180 F. 2d 257 (C.A. 9, 1950). A person who voted first in local elections and then in national elections held in 1946 in Italy was expatriated on the authority of *Bisceglia v. Acheson, Longobardi v. Dulles*, 204 F. 2d 407 (C.A. D.C., 1953).

Other cases involving local elections held in occupied Germany following World War II have gone off on the question whether they took place in a "foreign state" within the meaning of the statute, but did not question whether the elections were "political." *Brehm v. Acheson*, 90 F. Supp. 662 (1950) and *In re Riedner*, 94 F. Supp. 289 (1950).

The term "political election" for the purposes of section 401(e) of the Nationality Act of 1940 has been defined judicially as the Act of choosing by vote a person to fill an office, which office pertains to the conduct of government, *Kuwahara v. Acheson*, 96 F. Supp. 38 (1951); *Moldoveanu v. Dulles*, 168 F. Supp. 1 (1958).

The current position of the State Department appears to be based upon dicta with reference to the term "political election" in the decision by the Supreme Court in *Perez v. Brownell*, 356 U.S. 44 (1958). The Court said that that description carries with it the scope and meaning of its context and purpose; and that classes of elections—nonpolitical in the colloquial sense—as to which participation by Americans could not possibly have any effect on relations of the United States with

71

another country are excluded by any rational construction of the phrase. *Supra* at 59, 60.

The Court was not concerned with a local election in *Perez*. A footnote to the majority opinion reflects that the petitioner did not object to the characterization of the election in which he voted as a "political election," and that in oral argument counsel for the petitioner expressed his understanding that the election was for Mexico's president. The scope intended by the Court in its expressions, "nonpolitical in the colloquial sense" and "as to which participation by Americans could not possibly have any effect on the relations of the United States with another country" is not entirely clear.

There is no indication that the court contemplated that all local elections should be excluded, thereby overruling the *Bisceglia* and *Miranda* cases. Neither the majority nor any of the minority opinions discussed or cited those cases.

The majority said the successful conduct of international relations may be jeopardized "when the citizen of one country chooses to participate in the political or *governmental* affairs of another country." (Emphasis supplied) 356 U.S. at 59. The Court concluded that Congress had provided, without exceeding its Constitutional powers, that anyone who votes in a foreign election of significance politically in the life of another country shall lose his American citizenship. *Supra* at 62. There is no reason to suppose that the Court did not here use the term "significance politically" to encompass "governmental affairs," as it had previously indicated.

The Chief Justice, joined by Justices Black and Douglas, dissenting, referred to both *Matter of P—* and *Matter of F—, supra*. The reference to *Matter of P—*, appears to be unfavorable, although the opinion does not indicate whether the Chief Justice actually disagreed with the decision or merely considered it an extreme example of conduct which would result in loss of nationality. The dissenting Justices did not, however, appear disturbed by the fact that *Matter of P—*, involved a local election for an alderman, noting, however, that that election was open only to British subjects.

The applicant is also a British subject, or at least she was at the time the voting in question took place. The evidence in this case does not indicate whether the elections in which the applicant voted required the possession of British or Canadian nationality. The special inquiry officer's decision, however, indicates that property owners and taxpayers were expected to vote.

The *Scavone* case contains an indication that at least one political party was involved in the particular election covered by the case, the administrative election of March 31, 1946, at Guardia Lombardia, Italy. *Bisceglia* and *Tomasicchio* also involved elections for mayor

72

during March 1946 in other communities in Italy, but did not specifically indicate any activity by political parties. The opinion in *Miranda* v. *Clark* indicates there was a contest between parties. The candidates in the elections involved in the *Brehm* and *Riedner* cases appear to have represented political parties. None of these cases, however, indicates that the presence of political parties in the elections was at all determinative of the outcome of the case or that such presence is a necessary ingredient of the term "political election."

Moreover, the limited reference to *Matter of P—* in one of the dissenting opinions in *Perez* is not an indication that the election must be open only to those possessing the nationality of the country in question, in order for expatriation to occur. In fact the legislative history indicates otherwise. A suggestion to so restrict section 401(e) was rejected. *Hearings on H.R. 6127 before House Committee on Immigration and Naturalization*, 76th Cong., 1st Sess., 398, 490, 491.

The majority and minority opinions in *Perez* contain numerous references to the effect that elections conforming to the statutory purpose should bear some connection with the relations between the United States and the other country, or that participation by United States nationals in the elections should otherwise be in derogation of their allegiance to the United States. These references present imprecise standards, however. The Department of State's reliance in its letter of January 11, 1960, on the lack of a campaign along political (presumably partisan) lines, the strictly municipal basis of the elections and the exclusively local municipal issues encounters the same difficulty.

Doubtless the consular officer relied on a similar test in the applicant's case, unless he considered that all muncipal elections are excluded from the operation of the statute.

It is not always apparent what local elections, or local issues, have political significance in the life of another country. The distinction certainly cannot be made on the basis that they are "local." Local questions, or personalities today, may become national, or international, issues or figures tomorrow. An election for the mayor of West Berlin, for example, would without question have an immediate effect on our relations, not only with Germany but with other countries. Other situations may be much more subtle, however, and their effects only apparent over a long period of time. Moreover, the foreign relations of the United States do not not only involve high-level policy matters and headlines. They include the day to day negotiations between governments in behalf of individuals. The effect of individuals' actions in this area are even more elusive.

The Court itself in *Perez* recognized the vagueness of its suggested standards for determining "political" elections when it said that spe-

cific applications are open to judicial challenge, as are other general categories in the law, by a "gradual process of judicial inclusion and exclusion," citing *Davidson* v. *New Orleans*, 96 U.S. 97, 104 (1878). 356 U.S. at 60.

In the absence of any judicial decision defining more clearly a requirement that any election coming within the purview of the statute must be political in the sense that it is likely to affect the relations between this country and the country concerned, we do not feel called upon to make such a determination here. We believe, however, that participation in foreign elections of a purely local character may well be inconsistent with allegiance to this country, and that in many such elections the repercussions may be unfavorable to the United States. We doubt that Congress contemplated that each and every election be analyzed from the point of view of its effect on our foreign relations, especially since that effect may be extremely difficult, or impossible to ascertain at or about the time of the election. Cf. *Bisceglia* v. *Acheson, supra.*

Factors in elections such as the nature of the issues involved, their possible effect on the foreign relations of the United States, the administrative and controlling bodies, the presence or absence of support of certain issues or candidates by political parties, may be relevant and material, individually or in combination, in determining whether some elections are "political" for purposes of the statute. We do not attempt to rule here for all the different types of elections of a public nature.

We hold, however, the elections to choose representatives of the people for the conduct of the government of a geographical subdivision of a foreign state fall squarely within the purview of the statute. Therefore, the absence in this record of evidence delineating the factors set forth above is immaterial.

The Attorney General's ruling in *Matter of F—, supra,* occurred early in the history of the statutory provisions covering expatriation by voting in foreign elections, and was somewhat tentative. It is clear, however, that the meaning with respect to local elections which has been given to the term "political election" by the Attorney General, and subsequently by this Board, is also the meaning attributed to that phrase by the only courts which have directly considered the question. Our review of the law leads us only to the conclusion that the elections in which the applicant participated were "political" in the colloquial sense. We find nothing in *Perez*, even as dicta, which induces us to conclude otherwise. We consider that the decisions of the courts of appeals in *Bisceglia* v. *Acheson,* decided in this circuit, and in *Miranda* v. *Clark* are controlling in this situation.

The Service takes a firm position that the view of the Department of State is contrary to the law on the point considered here. The Service Representative in oral argument has referred us to *Bisceglia* v. *Acheson* and *Kuwahara* v. *Acheson*, as well as the prior precedents of this Board, and argues that *Perez* does not alter them. We strongly concur.

The difficulties in which this 74-year-old, ill widow finds herself stem solely from the conflicting interpretations which the two Government agencies place upon section 401(e) of the Nationality Act of 1940 and its successor, section 349(a)(5) of the Immigration and Nationality Act. The facts were made available equally to both agencies. There is little doubt that if the consular officer had considered the applicant expatriated, she would have qualified readily for an immigration visa and been found admissible by the Service.

While noting the many decisions relating to expatriation which indicate that factual doubts should be resolved in favor of the individual, and the law construed as far as is reasonably possible in his favor, we hold that the law and the facts in this case are clear and necessitate a ruling that the applicant has expatriated herself. The order of the special inquiry officer will be affirmed.

**ORDER:** It is directed that the order of the special inquiry officer be and is hereby affirmed.