MATTER OF RUSSO

In Visa Petition Proceedings

A-12354848

*Decided by Board January 8, 1965*

Since a United States citizen who voted in a municipal election in Italy on
March 30, 1946, has the burden of proving duress by a preponderence of the
evidence (section 349(c), Immigration and Nationality Act, as amended; 8
U.S.C. 1481(c)), and petitioner failed to carry her burden, her voluntary
voting in said municipal election resulted in expatriation under section
401(e), Nationality Act of 1940.

The District Director, New York District, certified to us his order
denying petitioner's application to have her married daughter, an
Italian national, given the preference available to the daughter of a
United States citizen under the quota; the District Director held that
the petitioner had lost United States citizenship when she voted in
Italy in 1946. Petitioner claims that she did not lose her citizenship
because her voting was under duress and was without knowledge of
her United States citizenship. No change will be made in the Dis-
trict Director's order.

Petitioner, born in the United States on June 4, 1908, was a citizen
of both the United States and Italy at birth. After the death of her
father in 1910 her mother took her to Italy where she resided until
May 8, 1961 when she entered the United States as an alien for per-
manent residence. Petitioner married in Italy in 1932, the benefici-
ary was born the following year.

The evidence as to voting in Italy is based primarily upon admis-
sions made at various times by the petitioner. The earliest admis-
sions—in a questionnaire the petitioner completed on January 22,
1954, before a vice consul of the United States at Naples, Italy to
obtain a United States passport—revealed that she voted in munici-
pal elections on March 30, 1946 and May 25, 1952, in national elec-
tions on June 2, 1946, April 18, 1948 and June 7, 1953, and that she
voted without knowing that she should not vote. The vice consul
executed a Certificate of Loss of Nationality on February 3, 1954
stating that petitioner had lost United States nationality by voting

in a political election in Italy on March 30, 1946 (section 401(e), Nationality Act of 1940; 54 Stat. 1168).

Other admissions were made at a hearing before a naturalization examiner on May 18, 1963. Petitioner testified she had furnished truthful information concerning voting to the American consul in Naples (pp. 6-8), that she then could recall the dates of voting but cannot now (pp. 7-8, 11) and that she does not remember whether she voted in 1946. Somewhat inconsistent with the testimony that she cannot recall the dates of voting, she testified that she voted on the dates shown in the questionnaire (pp. 6-8, 15). She stated she was not permitted to read the questionnaire before she signed it (pp. 6-7). The Service officer in charge at Naples, Italy has furnished the information that evidence of voting which was available when petitioner made her statement to the vice consul, has been destroyed.

The fact that the petitioner voted at the times shown in the questionnaire is deemed established by the admissions in the questionnaire, her present admission that she voted and that she told the vice consul the facts about her voting, the certificate of loss of citizenship executed by the vice consul and the presumption of official regularity existing in connection with its execution (*Vaccaro* v. *Bernsen*, 267 F.2d 265 (5th Cir., 1959)).

Petitioner claims she was forced to vote. She explained her statement of 1954 (about voting without knowing she should not vote) meant that she did not want to vote, but that she did because she was told to vote to help democracy in Italy (pp. 7, 11-13). She said that before she voted in 1948, a high church official, stating that he had received a telegram from the American consul urging all American people to vote, told the congregation of which she was a part to vote in order to prevent the Communists from gaining power and taking away their children; the church official threatened those who did not vote with excommunication (pp. 13-14). She stated that after she voted in one election the pastor of the church suggested that she vote in the others (p. 6). Petitioner submitted a letter dated January 25, 1962 from a church official who stated that in 1948, he "insisted" that the petitioner vote because it was her moral responsibility. Petitioner testified that in municipal elections there was no pressure to participate (pp. 14-15).

The contention that duress was present in the petitioner's voting cannot be considered a defense as to any voting after December 24, 1952 (she voted on June 7, 1953); the provisions of section 349(b) of the Act, 8 U.S.C. 1481(b) (as the hearing officer has fully pointed out) raise a conclusive presumption in circumstances such as exist

13

here that expatriation occurred as of June 7, 1953 (*Matter of C—*, 9 I. & N. Dec. 41; *Matter of C—S—*, 9 I. & N. Dec. 670).

If it were necessary to consider petitioner's acts of voting prior to December 24, 1952 the conclusive presumption would not apply. As to voting prior to December 24, 1952 the rule as to duress depends upon whether the issue as to loss of citizenship was raised before or after September 26, 1961. In this proceeding, the issue was raised after September 26, 1961 by the filing of the visa petition on October 16, 1961; the governing rule is that the person claiming duress has the burden of proving the claim by a preponderance of the evidence (section 349(c) of the Act, 8 U.S.C. 1481(c)). Petitioner failed to carry her burden: voting in a municipal election is expatriatory (*Bisceglia* v. *Acheson*, 196 F.2d 865 (D.C. Cir., 1952)) and by her own admission her voting in the municipal elections was voluntary, and in this case, expatriation occurred in 1946 under section 401(e) of the Nationality Act when the first expatriative act occurred.

The petitioner's claim that when she voted she did not know she was a United States citizen need not be considered for loss of United States citizenship is conclusively established by reason of her voting in 1953. Moreover she voted in 1952 and in 1953 after she had learned she was a citizen of the United States and before she had been informed that she had lost United States citizenship. The voting in 1952 was in a local election where duress was not involved; the voting in 1953 was in an election where duress cannot be offered as a defense. It is not necessary to discuss the contention further. *Roger* v. *Patokoski*, 271 F.2d 858 (9th Cir., 1959) which concerned the commission of acts of expatriation by a person who at the time had not known that he had a right to United States citizenship is therefore not pertinent. We may add for the record that it is our belief that, even prior to 1950, the petitioner must have known she was a United States citizen. She wanted to come to the United States but gave as reasons only the fact that she had no money or that her birth certificate was not available—documentary grounds were not advanced; furthermore, even before 1940, there was a question in her mind as to whether or not she was entitled to a United States passport (pp. 9–10).

The fact that petitioner did not intend to lose United States citizenship by voting does not save her from the consequences of voting (*Perez* v. *Brownell*, 356 U.S. 44 (1958); *Acheson* v. *Mariko Kuniyuki*, 190 F.2d 897 (9th Cir., 1951), certiorari denied 342 U.S. 942).

ORDER: It is ordered that no change be made in the order of the District Director.